**Elizabeth KNIGHT et al., Plaintiffs-Appellants,**

**v.**

**Edward L. ANDERSON, as Sheriff of the County of Lake, California, Defendant-Appellee.**

**No. 71–2553.**

United States Court of Appeals,
Ninth Circuit.

May 24, 1973.

George F. Duke, Richard B. Collins, Jr., Lee J. Sclar, William P. Lamb, of Cal. Indian Legal Services, Berkeley, Cal., for plaintiffs-appellants.

David L. Luce, Dist. Atty., Lakeport, Cal., for defendant-appellee.

---

Before BROWNING, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

## OPINION

This is an action for declaratory and other relief brought by certain native American Indians. They seek a declaration that they have a right to go upon certain property of the United States in Lake County, California, to express grievances over acts of the United States government in dispossessing California Indians from their tribal lands and in failing to make efforts to restore lands to Indians to enable them to preserve, protect and pursue their traditional way of life. They alleged that the defendant, the Sheriff of Lake County, acting under color of the state's law, has deprived them and threatens to deprive them in the future, of rights secured to them by the federal constitution. Specifically, they ask for a declaration that they are deprived of their federal constitutional rights by the application of section 602(l) and (n) of the California Penal Code [1] to their acts in visiting excess federal land in Middletown, California.

The sheriff responded with a motion to dismiss, stating two grounds: failure to show an actual controversy between the parties, and failure to state a claim upon which relief can be granted. The motion was accompanied by two affidavits. One is by the caretaker of the specific parcel of property in question. He further alleges that on May 1, 1971, at about 11:45 P.M. a number of Indians assembled at the gate to the property. He locked the gate and also locked up the buildings on the premises, in one of which he was living. The Indians broke the chain securing the gate lock, broke the lock on a second locked gate, broke into the building in which he lived, which was also locked, broke into another locked building, and remained in the latter building from 3 o'clock in the morning until they were later taken into custody. All Indians on the property were removed by about noon on May 3. In his affidavit the caretaker also described the procedure required for obtaining permission to visit the property, which is being held by the government for sale or other disposition, having been declared surplus.

An affidavit by the District Attorney of Lake County further describes the property. It was formerly used as an army radio receiving station. It is about 6½ miles off the Middletown-Lower Lake highway in Lake County. The buildings consist of a garage and shop, an office and living quarters occupied by the caretaker and his wife, a large cement radio equipment building, and a communications tower. All of these structures are enclosed by a wire fence with locked gates. The property was privately owned until 1957 when the federal government acquired it by a decree of condemnation. Ingress and egress to the property is by an easement from the county road across other private property which is for use only of the military for its use of the property. One cattle guard and two locked gates are maintained at different points on this easement road.

The plaintiffs' response was to file their own motion for a summary judgment, which was also accompanied by two affidavits. Each affiant is one of the plaintiffs. Each alleges that the af-

---

1. Section 602 provides, in part:

"Every person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor:

* * * * *

(1) *Occupation.* Entering and occupying real property or structures of any kind without the consent of the owner, his agent, or the person in lawful possession thereof.

* * * * *

(n) *Refusal To Leave Private Property.* Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by a peace officer and the owner, his agent, or the person in lawful possession thereof."

fiant's Indian ancestors lost their lands in California as a result of fraudulent actions of the United States Congress, and that each wants to have the affiant's grievance about this heard. Each alleges that the radio receiving station is now surplus property, that it covers about 1100 acres and that on May 1, 1971, a group of Indians went there to express their grievance and were arrested for trespassing. Each states that the affiant has a right to and wants "to go up to that property to express my grievance over what has happened to the Indians in California" and that the affiant fears that if an attempt is made to exercise this "right" the sheriff will arrest the affiant. Neither affidavit in any way contradicts any of the allegations of the affidavits filed in support of the sheriff's motion to dismiss. Neither affidavit alleges any threat by the sheriff to arrest any Indian except an Indian who attempts to "go up to" that property to protest. Neither alleges a desire to protest elsewhere in the county, the only area in which the sheriff has jurisdiction.

The court entered an order dismissing the action on the ground that the complaint fails to state a claim upon which relief can be granted. However, regardless of the label that the court placed upon its order, or the ground upon which the court relied, it is, in substance, an order granting a summary judgment of dismissal. Rules 12(b), 56 F.R.Civ.P.

■■ We affirm. Not every parcel of publicly owned property is a suitable or available place for the exercise of the constitutional rights of citizens to petition their government or express grievances. It is one thing to say that a public street or plaza or park or other area open to the public is suitable and available for this purpose. It is quite another thing to say that property of the type described in the affidavits is similarly suitable or available for this purpose. *Cf.* Adderly v. Florida, 1966, 385 U.S. 39, 41, 47, 87 S.Ct. 242, 17 L.Ed.2d 149; Cox v. New Hampshire, 1941, 312 U.S. 569, 574, 576, 61 S.Ct. 762, 85 L.Ed. 1049; Cox v. Louisiana, 1965, 379 U.S. 536, 554–555, 85 S.Ct. 453, 13 L.Ed.2d 471; Cox v. Louisiana, 1965, 379 U.S. 559, 562–563, 85 S.Ct. 476, 13 L.Ed.2d 487; Amalgamated Food Employees v. Logan Valley Plaza, 1968, 391 U.S. 308, 320, 88 S.Ct. 1601, 20 L.Ed.2d 603; Grayned v. City of Rockford, 1972, 408 U.S. 104, 116, 92 S.Ct. 2294, 33 L.Ed.2d 222. No case has been cited to us, and we know of none that holds that government property such as that involved in this case must be made available to the public for the exercise of first amendment rights.

Moreover, it is perfectly clear from the affidavits that the previous visit of the Indians to the property was not a peaceful assembly and protest, but a forcible and unlawful trespass and occupancy of federally owned property and buildings that are not open to the public. If this is what the plaintiffs wish to do in the future, they have no right to do it. If all that they desire to do is to hold a protest on federally owned property that is open and available for that purpose, there is nothing in the papers before this court to indicate either that they could be or that they would be arrested or prosecuted for doing so by the sheriff under the California Penal Code section that the Indians mention. Under these circumstances, summary judgment was properly granted for the defendant.

Affirmed.